UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| **POROS, INC. d/b/a BENTLEY'S PANCAKE HOUSE**, an Illinois corporation; **PETE GIAFIS**, an individual; and **STAVROULA GIAFIS**, an individual, | ) ) ) ) ) ) |
| Defendants. | ) ) |

No.: 1:21-cv-01944

Hon. Mary M. Rowland
District Judge

**SECRETARY OF LABOR'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

i

Plaintiff Martin J. Walsh, Secretary of Labor, U.S. Department of Labor ("Secretary") submits this memorandum in support of his *Motion for Summary Judgment* against Defendants Poros, Inc. d/b/a Bentley's Pancake House ("Poros"), Pete Giafis, and Stavroula Giafis (collectively, "Defendants"). During the period of February 5, 2018, through February 2, 2020 ("Investigation Period"), Defendants cheated their employees out of the wages lawfully owed to them under the Fair Labor Standards Act, as Amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act"). Defendants knew exactly what they were doing, as evidenced by their attempts to conceal their true payment practices and their history of similar FLSA violations. This Court should enter summary judgment against Defendants to hold them accountable to their employees because the undisputed facts show they unlawfully kept a portion of their servers' tips to use toward their business expenses, paid kitchen staff at their regular rates when they worked more than 40 hours per week instead of paying the appropriate overtime rate, and failed to maintain accurate pay records.

**I. Issues Presented**

There are no genuine disputes of material fact and the Secretary is entitled to judgment as a matter of law on the following issues:

   a. Whether Defendants are jointly and severally liable for compliance with the FLSA;

   b. Whether Defendants violated § 203(m)(2)(B) of the Act by taking a portion of servers' tips and using it for the restaurant's "cash flow;"

   c. Whether Defendants violated § 207 of the Act when they paid kitchen staff (i.e. dishwashers, cooks, and bussers) at their regular rate for all hours worked, including those over forty hours per week;

   d. Whether Defendants violated § 211 of the Act by failing to make and keep certain pay

records;

    e.  Whether Defendants' violations of the Act were willful;

    f.  Whether appropriate remedies for Defendants' FLSA violations include back wages, liquidated damages, and an injunction for future compliance.

## II. Legal Standard

Summary judgment is proper if the movant shows there is no genuine issue of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). No genuine issue of fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986).

## III. Argument

    a.  <u>Defendants are Jointly and Severally Liable for Compliance with the Act.</u>

Defendants are jointly and severally liable for compliance with the FLSA's tipping, overtime, and recordkeeping requirements. Multiple employers may jointly employ a worker, and each is responsible, both individually and jointly, for compliance with the Act. 29 C.F.R. § 791.2; *Falk v. Brennan*, 414 U.S. 190, 195 (1973). The Act covers employers whose employees are employed in an enterprise engaged in commerce. 29 U.S.C. §§ 213(r), (s)(1)(A). The FLSA defines such an enterprise as a business that has: (1) employees engaged in commerce, the production of goods for commerce, or working with goods or materials that have been moved in or produced for commerce; and (2) an annual gross dollar volume of sales ("ADV") of $500,000 or more. 29 U.S.C. § 203(s)(1)(A). Defendant Poros satisfies both requirements because (1) its employees engage in commerce by processing credit card transactions transmitted outside the state and working with goods moved in commerce by using food products manufactured outside

of Illinois; and (2) Poros had an ADV exceeding $500,000 during each year of the Investigation Period. (Secretary's Statement of Material Facts ("SMF") #2-3.)

Individual liability also exists under the FLSA for "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Individuals have been found liable as employers under the FLSA where they serve as corporate officers, have significant ownership interest in the company, and exert control over the company's day-to-day functions, or where they supervise employees and have some responsibility for the alleged violations. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 696-98 (N.D. Ill. 2015). Defendants Pete and Stavroula Giafis are individual employers given their ownership of Poros and service as corporate officers, management of Poros's daily operations, supervision of employees, and responsibility for the violations alleged. Defendant Pete Giafis owns Poros, serves as its President, and controls its daily operations, including by hiring and supervising employees. (SMF #4.) Defendant Stavroula Giafis is the Secretary of Poros and has a significant role in its day-to-day operations, in that she handles all employees' pay as well as hires and supervises some employees. (SMF #5.) Both are responsible for the violations alleged because they carried out the unlawful pay practices. *See* Part III *infra*.

b. Defendants' tip out practice violated the FLSA's prohibition on keeping tips.

Defendants violated § 3(m)(2)(B) of the Act by improperly taking a portion of the servers' tips for their own use. While the FLSA sets a mandatory minimum wage of $7.25/hour, § 3(m) creates a limited exception allowing employers to pay tipped employees as little as $2.13/hour and take a "tip credit" for the remainder of its minimum wage obligation up to $7.25/hour. 29 U.S.C §§ 203(m), 206. To use the tip credit, employers must allow employees to

retain all tips they receive, unless tips are pooled amongst customarily and regularly tipped employees. *Id.* § 203(m)(2)(A). Cooks and dishwashers are not customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 Fed. Appx. 222, 231 (5th Cir. 2011) ("Back-of-the-house staff like cooks and dishwashers do not [receive tips], and thus cannot participate in a mandatory tip pool."); Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #15: Tipped Employees Under the FLSA* (Apr. 2018) ("A valid tip pool may not include employees who do not customarily and regularly receive tips, such as dishwashers [and] cooks . . . ."); S. Rep. 93-690, at 43 (Feb. 22, 1974) (identifying dishwashers and cooks as customarily non-tipped employees). An employer will lose its entitlement to the tip credit if it exercises control over an employee's tips. *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 404 (N.D. Ill. 2019); *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998) ("[A]n employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips.").

Employers are expressly prohibited from keeping tips received by their employees for any reason, even if the employer does not avail itself of the tip credit. 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.52. Courts have repeatedly interpreted this prohibition to bar employers from using employees' tips to pay for the employer's business expenses. *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 245-46 (5th Cir. 2016) (holding that FLSA § 3(m) prohibits an employer from offsetting a portion of servers' tips to cover discretionary business costs); *Dayton v. Fox Rest. Venture*, LLC, No. 1:16-cv-02109, 2017 WL 286788, at *3 (S.D. Ind. Jan. 23, 2017) (holding employer cannot use delivery drivers' tip money to subsidize its business costs related to a customer satisfaction policy); *Brennan v. Haulover Shark & Tarpon Club, Inc.*, No. 74-1276-civ,

1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1986); *cf. Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *9 (E.D. Penn. May 14, 2015) ("[I]t would be unjust for Defendants to unlawfully take portions of Plaintiffs' tips to pay their business expenses."). Payment non-tipped employees' wages is a business expense for which an employer may not use employees' tips. *Brennan*, 1986 WL 587, at *16 (ruling employers violated § 3(m) where they withheld a portion of servers' tips to put into a fund that increased the compensation for long-term employees); *Rui Tong v. Henderson Kitchen, Inc.*, No. 17-1073, 2018 WL 4961622, at *6 (E.D. Penn. Oct. 12, 2018) (finding tipped employees' allegation that employers took their tips to pay non-tipped employees, if true, would be a "clear violation" of the Act's tip requirements); *Macketh v. Kooma, Inc.*, No. 14–04824., 2015 WL 2337273, at *8 (E.D. Penn. May 14, 2015) (finding servers and bartenders sufficiently pled FLSA violation were they alleged, *inter alia*, their employer took some of their tips to compensate cooks). An employer who improperly utilizes tips in violation of § 3(m)(2)(B) is liable for the amount of tips it unlawfully retained. 29 U.S.C. §§ 216(b), (c).

As an initial matter, Defendants paid servers sub-minimum wage while taking advantage of the tip credit but failed to allow the servers to retain all their tips. Defendants undisputedly took a portion of their servers' tip money, despite paying servers far less than minimum wage and taking advantage of the tip credit. (SMF #9, 15, 17.) Defendants told servers the tips would be used to "tip out" the bussers. (SMF #20.) Instead, Defendants kept the ill-gotten tip money in their cash vault, which was used as part of the restaurant's "cash flow" for business expenses, such as paying wages to the kitchen staff and cash deliveries. (SMF #17-18.) By taking some of the servers' tip money to use as they saw fit,[1] Defendants unlawfully failed to allow servers to

---

[1] Defendants have not alleged that the tip money they took from servers was used in furtherance of a lawful tip pool including only customarily and regularly tipped employees. (*See* ECF No. 10.) Nor would such an allegation be

retain all tips while taking advantage of the tip credit. *Berger*, 430 F. Supp. 3d at 404. It is antithetical to the purpose of the Act for Defendants to both utilize the tip credit to pay servers a pittance and control servers' tips for their own gain. *See Gionfriddo v. Jason Zink LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) ("[I]t would be anathema to the purpose behind the FLSA to simultaneously allow him to take tips from a collective tip pool that was set up to allow him to pay his employees at a rate substantially below the minimum wage."); *Whited v. New Café at Greystone Gardens*, No. 3:18-1811, 2020 WL 1271681, at *4 (M.D. Penn. Mar. 17, 2020) ("[I]t would be contrary to the purposes of the FLSA to allow . . . an employer, to take any portion of a tip pool while simultaneously allowing him to take a tip credit.").

Not only did Defendants fail to allow servers to retain all tips, but also Defendants kept the tip money taken from servers so they could use it for the unlawful purpose of paying their own business expenses. According to Defendants, they used the servers' tip money for the restaurant's "cash flow" to pay the restaurant's cash expenses, such as wages for kitchen staff who were paid in cash and small cash-only food purchases. (SMF #18.) The cost of food and ingredients for the restaurant is unquestionably a business expense for which tip money cannot be used. *See Steele*, 826 F.3d 237 at 245-46 (affirming district court ruling that the cost of cash delivery was a business expense for which employees' tip money could not be used). Similarly, it is Defendants' responsibility to pay the wages of their non-tipped workers, and the Act prohibits them from offsetting their labor costs using the tip money earned by other employees. *Brennan*, 1986 WL 587, at *16; *Rui Tong*, 2018 WL 4961622, at *6; *Macketh*, 2015 WL

---

supportable given that Defendants admit they used the money for "cash flow" including to pay wages for dishwashers and cooks (SMF #18), and dishwashers and cooks are not customarily and regularly tipped employees. *See Roussell*, 441 Fed. Appx. at 231 (5th Cir. 2011); Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #15: Tipped Employees Under the FLSA* (Apr. 2018).

2337273, at *8. In short, Defendants' admissions establish they kept the tip money taken from servers to subsidize the cost of running their business, in plain violation of FLSA § 3(m)(2)(B).

To the extent Defendants attempt to shirk liability by claiming they did not enforce the tip out requirement, such an argument is factually and legally flawed. From a factual perspective, Defendants' actions in controlling every aspect of the tip out demonstrates this was a required practice. The mandatory nature of the tip out is demonstrated by Defendants' actions to: maintain the tip out practice from the outset of their ownership of the restaurant (SMF #16); administer the tip out practice via a uniform procedure in which Defendants created envelopes for each server to deposit their tips and collected the money at regular intervals (SMF #17); set the percentage of tip money for servers to contribute (SMF #15, 19); training servers that they "must" leave a portion of their tips in the envelopes for the tip out and presenting the tip out as part of the standard procedures (SMF #19); chiding servers who Defendants believed failed to contribute the full amount (SMF #22); and failing to tell servers the tip out was voluntary (SMF #21). *See, e.g.*, *Sanchez v. Roka Akor Chi. LLC*, No. 14-CV-4645, 2016 WL 74668, at *5 (N.D. Ill. Jan. 7, 2016) (ruling plaintiffs could establish a mandatory tip pool with evidence that defendants facilitated the tip pool arrangement, set employee contribution amounts, collected the tips in a uniform manner, and continuously operated the tip pool). Moreover, from a legal perspective, the Act does not allow employers and tipped employees to agree to retention of the employee's tips. WHD Field Operations Handbook Chp. 30d01(a) *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d01 ("An employer and employee cannot agree to waive such employee's right to retain all tips received."); *see also Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998) (quoting

7

FOH 30d01a). Thus, under no circumstance would Defendants' improper use of servers' tip out money be lawful.

Because the undisputed facts show Defendants used tips taken from servers for their business expenses, the Secretary is entitled to a finding that Defendants violated FLSA § 3(m)(2)(B) and are liable for the amount of tip money unlawfully retained.

    c. <u>Defendants violated the FLSA's overtime requirements.</u>

Defendants failed to pay kitchen staff at the appropriate rate for hours worked over 40 per week. The FLSA sets a maximum workweek of 40 hours and requires employers to pay employees at 1.5 times the employee's regular rate for hours worked in excess of 40 in a workweek, the overtime premium rate. 29 U.S.C. § 207(a)(1). The kitchen staff undisputedly worked grueling schedules far beyond 40 hours per week with many regularly logging 60-70 hours per week. (SMF #23.) The kitchen staff members were therefore entitled to be paid at an overtime premium rate of 1.5 times their regular rates for hours worked over 40.

Although Defendants claim to have paid kitchen staff members appropriately, the unrefuted evidence shows they paid kitchen staff at their regular rates for all hours they worked. Many kitchen staff members testified they were paid at their regular rate, rather than the proper overtime premium rate, when they worked more than 40 hours per week. (SMF #24.) Critically, the fact that Defendants paid kitchen staff at their regular rates for all hours worked is confirmed by the "chit tapes," which <u>Defendants admit are accurate</u>. (SMF #25-26.) While only a few chit tapes are available because Defendants destroyed them (SMF #27), the chit tapes demonstrate Defendants calculated kitchen staff members' pay using their regular rates for all hours worked. (SMF #25.) Thus, employee testimony and Defendants' own records reflect Defendants failed to pay kitchen staff at 1.5 times their regular rates for hours over 40 in violation of FLSA § 7.

8

Defendants attempt to conceal and explain away their violations based on handwritten notebooks, which purport to show they paid kitchen staff at the appropriate rates. While employees state Defendants kept handwritten notebooks to document they received their pay (*see* SMF #29), the notebooks provided by Defendants during the investigation are different than those shown to the employees.[2] (SMF #32.) Defendants' suspicious records are replete with inaccuracies and internal and external inconsistencies that prevent a reasonable factfinder from relying on them. First, as an initial matter, the handwritten notebook pages have signatures that Defendants claim are the signing employees' acknowledgment of proper payment. While employees did sign a handwritten notebook when they received wages, the notebook they signed had little information beyond the employee's name and total hours. (SMF #29.) In contrast, the notebook relied on by Defendants has detailed information about the wage rates and hourly breakdown, which was not present at the time the employees signed. (SMF #32.) Second, Defendants' handwritten notebook is inconsistent with their own payroll records and timecards. Defendants admit they inaccurately recorded kitchen staff members' hours and pay on the payroll, and the hours recorded in the handwritten notebook are frequently inconsistent with the timecards reflecting employees' actual hours. (SMF #31, 33.a.) For example, the timecards for Fernando Rojas show he worked 72 hours from May 27, 2019, to June 2, 2019, but the handwritten notebooks from Defendants record him as working only 68 hours during that period. (SMF #33.a.i.) Similar inconsistencies are found in other weeks of Mr. Rojas's employment and for other kitchen staff members. (SMF #33.a.) In addition to being demonstrably incorrect when compared to the timecards, the hours listed in Defendant's notebook for many employees are facially suspect, such as instances in which Ramon Gonzalez is listed as having worked in

---

[2] Defendants have never produced handwritten notebooks shown to employees.

9

increments of 0.33. (SMF #33.a.iii.) Third, to give the appearance that Defendants paid kitchen staff correctly, their handwritten notebook shows a number of "advances" made to some employees. (SMF #33.b.) For example, Defendants' notebook pages for Cristian Vallejo show he repeated received $400 "advances," which were subtracted from his weekly pay, but he never received advances on his pay from Defendants. (SMF #33.b.ii.) Other employees similarly did not received advances on their pay. (SMF #28.) Fourth, even on the face of the notebook, some employees were not paid at the appropriate overtime rate for hours worked over 40. (SMF #33.c.) For example, Defendants' notebook pages for Jose Cortez show "extra" payments in which hours worked over 40 per week were paid at his regular rate. (SMF #33.c.i.) The multitude of inaccuracies and uncanny coincidences can lead a reasonable fact-finder to only one conclusion - Defendants created these handwritten notebooks for the purpose of giving the false appearance of FLSA compliance.

   d. <u>Defendants violated the FLSA's recordkeeping provisions.</u>

Defendants did not make or maintain accurate records regarding employees' hours and compensation. Section 11 of the FLSA requires employers to "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them]. . . ." 29 U.S.C. § 211. Records must include, among other items, an employee's regular hourly rate; hours worked each workday and each workweek; the total daily or weekly straight-time earnings or wages due; and the total premium pay. 29 C.F.R. § 516.2(a)(6)-(9). For tipped employees specifically, employers also are required to keep and maintain records of the weekly or monthly amount of tips employees receive and report to the employer and the amount by which wages increased by tips. 29 C.F.R. § 516.28(a).

The FLSA makes it unlawful for covered employers to violate the § 11 recordkeeping requirements or knowingly make materially false records. 29 U.S.C. § 215(a)(5).

Defendants admit they failed to maintain records showing the amount of tips each server turned over to Defendants or how this tip money was used. (SMF #30.) They therefore violated the requirement to keep records of the tips received by employees and the amount by which the tips increased employee wages. *See* 29 C.F.R. § 515.28(a).

Moreover, Defendants failed to maintain pay records for kitchen staff because, as discussed above, the handwritten notebook in which they purportedly documented kitchen staff pay was demonstrably and purposefully inaccurate. *See* Part III.c *supra*. Moreover, the chit tapes, which accurately recorded how kitchen staff members were paid, were discarded by Defendants. (SMF #27).

    e. <u>Defendants' violations of the Act are willful.</u>

The Secretary is entitled to back wages and liquidated damages for a three-year statutory period because Defendants' violations of the Act are willful. 29 U.S.C. § 255(a). To establish willfulness, the Secretary must show Defendants knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also Berger*, 430 F. Supp. 3d at 409. Courts have consistently held attempts to evade compliance with the FLSA will constitute willfulness. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (finding willfulness where defendant's conduct showed "attempts to evade compliance, or to minimize the actions necessary to achieve compliance."); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) (finding willfulness where defendants developed a check-cashing scheme to create false records of payments made to its restaurant employees). Courts have also recognized willful violations where prior investigations disclosed

similar violations. *See Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (finding willfulness where employer had been previously investigated and gave assurances of future compliance with the FLSA).

Here, there is ample evidence of the willfulness of Defendants' FLSA violations. Defendants clearly knew about the Act's requirements because Defendants have been investigated by the Wage and Hour Division ("WHD") previously and found to have committed similar FLSA violations, notably paying kitchen staff at their regular rates for hours over 40 and failing to keep records. (SMF #35-36.) Instead of adhering to the FLSA's requirements, as they promised to do (SMF #37), they devised complicated payment methods and false handwritten pay records to obscure the fact that they were continuing the same overtime practices they knew to be unlawful. Defendants' shifting explanations of how they used the tip out money taken from servers similarly evidences knowledge of wrongdoing. (*See* SMF #20.) Their knowledge of their legal obligations under the Act, and their purposeful attempts to evade compliance, establish willfulness under the Act.

f. <u>The remedies sought by the Secretary are appropriate.</u>

1. *The Secretary correctly calculated back wages owed to Defendants' employees.*

Defendants are liable for back wages based on their violation of the Act's tip and overtime requirements. 29 U.S.C. § 16(c) (providing for employer liability for all unlawfully kept tips for violations of § 3(m)(2)(B) and unpaid overtime compensation for violations of § 7). The Secretary properly calculated Defendants owe a total of $83,414.74 in back wages to their employees, composed of $26,280 owed to servers for unlawfully kept tips and $57,134.74 owed to kitchen staff for unpaid overtime compensation. (SMF #40.) The Secretary's back wage

12

calculations are based on a reasonable reconstruction of the tips improperly kept and hours worked by kitchen staff, which is appropriate considering Defendants' failure to keep accurate records from which a more exact calculation could be made. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding it is the employer's burden to provide evidence negating the reasonableness of the Secretary's reconstructed calculations where the employer failed to make or keep accurate records); *Brown v. Family Dollar Stores of Ind.*, LP, 534 F.3d 593, 595 (7th Cir. 2008) ("[W]hen an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure."). The back wage calculations are explained, in detail, in the Declaration of WHD Investigator Reggiardo. (Ex. 12 ¶ 17.)

    2.    *Defendants are liable for liquidated damages.*

The FLSA provides that employers who violate the Act's minimum wage and overtime provisions "shall be liable" for liquidated damages equal to the amount of unpaid compensation. 29 U.S.C. § 216(b). Liquidated damages are "mandatory [for FLSA violations] unless the district court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998). The employer bears the substantial burden to prove good faith and reasonableness. *Bankston v. Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995). To show good faith, an employer must take affirmative steps to ensure its FLSA compliance; it may not simply claim ignorance. *Walton v. United Consumers Club*, 786 F.2d 303, 312 (7th Cir. 1986); *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 409 ("[Defendant] has not demonstrated any 'affirmative step' taken to ensure compliance as required to meet its substantial burden to demonstrate good faith and overcome the presumption of liquidated damages.").

Based on the undisputed facts, Defendants cannot meet their substantial burden of establishing a good faith and reasonable belief their pay practices complied with the FLSA. *See* Part III.e *supra*. Critically, Defendants made no effort to ascertain whether their tip out, overtime, or recordkeeping practices conformed to the law, such as by seeking the advice of a legal or financial professional or consulting government resources. (SMF #41-43.) Instead, they passively assumed compliance based on their employees' alleged desire to be paid as they were and practices allegedly typical in the restaurant industry. (*See* Ex. 1 at 103:15-105:9.) Such passive assumptions of compliance fall far short of the affirmative actions needed to establish reasonable good faith. *See Pautlitz v. City of Naperville*, 874 F. Supp. 833, 835 (N.D. Ill. 1994) ("Failure to take affirmative action to ascertain the Act's requirements 'precludes a finding of reasonable good faith,' even where the defendant's practices conform to industry customs . . . ."). Because Defendants undisputedly did not take such affirmative steps, they cannot establish a defense to liquidated damages, and the Court must award liquidated damages in an amount equal to back wages.

3. *An injunction is proper.*

District courts are empowered to enjoin violations of the Act. 29 U.S.C. § 217. An injunction is necessary if there are insufficient assurances of an employer's future compliance. *See, e.g.*, *Brock v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987); *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1080 (N.D. Ill. 2014). Because injunctions are remedial, courts grant them even when violations have ceased unless the court "soundly is convinced from the situation that there is no reasonable probability of a recurrence of the acts." *McComb v. Wyandotte Furniture Co.*, 169 F.2d 766, 770 (8th Cir. 1948). In determining whether to issue an injunction, courts "must give 'substantial weight to the fact that the Secretary seeks to vindicate a public, and not a

private right.'" *Martin v. Funtime Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (quoting *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987)). Employers' previous conduct and current compliance (or lack thereof) are also relevant. *Id.* Imposition of an injunction is "essential" and is not punitive because it imposes duties already required by the Act. *Id.* at 114.

An injunction to ensure Defendants comply with the Act in the future is appropriate here. Even after being made aware of their violations of the FLSA during a prior investigation, Defendants failed to correct their unlawful practices, instead creating a complex pay scheme and inaccurate records to obscure their violative conduct and avoid liability. Their unlawful behavior persisted despite agreeing to comply with the FLSA during the prior investigation. (SMF #37.) Accordingly, any assurances of future compliance by Defendants cannot be trusted. Given Defendants' reckless indifference to their obligations under the FLSA, injunctive relief is necessary to protect their employees from continued violations by Defendants and ensure Defendants keep records from which compliance can be determined in the future.

### IV. Conclusion

Based on the foregoing, there is no genuine dispute as to any material fact relied on by the Secretary, and the Secretary, as a matter of law, is entitled to summary judgment finding Defendants violated the Act's tip, overtime, and recordkeeping requirements, are liable for unpaid compensation totaling $85,864.74 and an equal amount of liquidated damages, and are enjoined and restrained from violating the FLSA in the future.

June 10, 2022                                               Respectfully submitted,

                                                                                                       **SEEMA NANDA**
                                                                                                       Solicitor of Labor

                                                                                                       **CHRISTINE Z. HERI**

Regional Solicitor

*/s/ Elisabeth Nolte*
**ELISABETH NOLTE**
Attorney Bar No. 6321218 (IL)

U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn Street, 8th Floor
Chicago, Illinois 60604
Phone: 312-353-7837
nolte.elisabeth.p@dol.gov

Attorneys for **MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor, Plaintiff