IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Martin J. Walsh, Secretary of Labor, United States Department of Labor, Plaintiff, <br><br> v. <br><br> Poros Inc. d/b/a Bentley's Pancake House, Pete Giafis, Stavroula Giafis, <br><br> Defendants. | Case No. 21-cv-1944 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Martin J. Walsh, Secretary of Labor, U.S. Department of Labor ("Secretary") brings this action against Defendants, Poros Inc. d/b/a Bentley's Pancake House, Pete Giafis and Stavroula Giafis for violating the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA). The Secretary now moves for summary judgment on his claims against Defendants. For the reasons explained below, the Secretary's motion for summary judgment [49] is granted in part and denied in part.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

1

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

### I. Local Rule 56.1

The Court first addresses the Secretary's argument that Defendants failed to comply with Local Rule 56.1. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed

---

[1] The facts are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted. The Secretary's Rule 56.1 statement is at Dkt. 50 ("PSOF"); Defendants' Rule 56.1 statement is at Dkt. 53 ("DSOF"). Defendants' response to the Secretary's statement is at Dkt. 52 ("Def. Resp."); the Secretary's response to Defendant's statement is at Dkt. 56. ("Pl. Resp.").

2

material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). Specifically, under Local Rule 56.1(e), the nonmovant's response to the movant's statement of facts must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. LR 56.1(e)(3). The Court may deem asserted facts as admitted if not controverted with specific citations to evidentiary material. *Id*; *see also Montano v. City of Chi.*, 535 F.3d 558, 569 (7th Cir. 2008) (where a party merely disagrees with the movant's asserted facts, that "is inadequate [to defeat summary judgment] if made without reference to specific supporting material.") (quotation omitted).

The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). "We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

The Court agrees with the Secretary that a number of responses by Defendants are deficient. In some responses, Defendants appear to concede the fact, but then add new facts or argument, sometimes with no citation to any evidence. Accordingly, the Court will deem admitted certain facts that are not properly disputed. The following are deemed admitted because the Defendants' responses "object to" or dispute

3

portions of the asserted fact or add new facts and fail to cite to any evidence and/or contain only legal argument: Def. Resp. at ¶¶ 9, 17, 22, 23, 25, 28, 33, 34, and 39–41. Thus, the foregoing asserted facts by the Secretary are deemed admitted.

## II. Investigations into Defendant's Pay Practices

Defendant Poros Inc., d/b/a Bentley's Pancake House ("Poros") is a full-service restaurant in Bloomingdale, Illinois. PSOF at ¶ 1. Since at least 2018, Defendants Pete Giafis and Stavroula Giafis, who are married, have served as the President and Secretary of Poros respectively. *Id*. at ¶ 4–5. Pete is responsible for hiring and supervising Poros' employees while Stavroula is responsible for handling the employees' pay as well as supervising and hiring employees. *Id.*

In 2014 the Department of Labor's (DOL) Wage and Hour Division (WHD) previously investigated Defendants' employment practices for the period of March 2012 to August 2013. PSOF at ¶ 35. The WHD found that Defendants violated FLSA's overtime requirements by paying employees at their regular rate for hours worked over 40 per week, rather than paying them the appropriate overtime premium, and violated the recordkeeping requirements by failing to maintain accurate pay and time records. *Id*. ¶ 36. At the culmination of the 2014 investigation, Defendants agreed to comply with the FLSA. *Id*. ¶ 37.

The investigation underlying this litigation concerns the period of February 5, 2018 through February 2, 2020 ("Investigation Period"). *Id*. ¶ 38. During this period, Defendants had approximately 25 employees who were required to record their hours by punching a timecard. *Id*. at ¶¶ 6-7. Renato Reggiardo ("Reggiardo") was the

4

investigator assigned to investigate Defendants for that period. DSOF ¶ 1. As a result of the investigation, WHD allege that Defendants violated the FLSA by unlawfully keeping a portion of servers' tips; paying cooks, dishwashers, and bussers at their regular rate for hours worked over 40 per week; and failing to keep accurate pay records. PSOF ¶ 39. Based on these violations, WHD determined that Defendants owe employees $83,414.74, comprised of $26,280 in unlawfully kept tips and $57,134.74 in unpaid overtime compensation. *Id.* ¶ 40. WHD also asserts that Defendants failed to take any affirmative actions to determine whether their pay and recordkeeping practices complied with the FLSA and had no practices or procedures in place to audit FLSA compliance. *Id.* ¶ 41.

### III. Defendants' Employees

During the period, Defendants employed the following individuals as servers: Venera Amdianova; Melanie Avitia; Laura Bertana; Rachel Daub; Christina Delis; Jennifer Gerger; Jody Joy; Patty Lindeman; Hayley Neal; Sanja Noriega; Heather Papadeo; Kelly Pedder; Lisa Pyle; Judy Schilke; Melanie Smith; and Janet Waekentien. PSOF ¶ 8. Defendants paid servers a cash wage of $4.85 to $5.15 per hour and took a tip credit for the remainder of their minimum wage obligation. *Id.* ¶ 9. Tip credit was taken for servers only, not for any other category of employee. *Id.* ¶ 10.

Defendants employed the following individuals as "back of the house" employees, who worked as cooks, dishwashers, and/or bussers ("kitchen staff"): Francisco Alorza; Antonio Alvarez; Catarino Chagoya; Jose Cortez; Ramon Gonzales; Miguel Pajaro;

Juan Pinzon; Fernando Rojas; Josue Tapia; "Chino;" Cristian Vallejo; and Gabino Vallejo. PSOF ¶ 11. Defendants paid kitchen staff at an agreed-on hourly wage rate, which was greater than minimum wage. *Id.* ¶ 12. Defendants paid kitchen staff either solely in cash or by a combination of cash and payroll check. *Id.* ¶ 14.

## IV. Defendants' Payment of Staff and Recordkeeping

### A. *Server Tip Out Practice and Payment to Kitchen Staff*

Defendants' tip out practice worked as follows: Defendants kept an envelope for each server, labeled with the server's name, next to the cash register. PSOF ¶ 17. At the end of each shift, servers put a portion of tips earned during that shift into their designated envelope. *Id.* At the end of the day, Pete collected the envelopes containing the servers' tip out money. *Id.* Pete and Stavroula would combine the money from the servers' envelopes and keep it in the restaurant's cash "vault" located in the office. *Id.* Defendants did not differentiate the tip money from other cash in the restaurant's cash vault. *Id.* Defendants told servers the tip out money used to tip out the bussers. *Id.* ¶ 20.

It is undisputed that the kitchen staff members worked more than 40 hours per workweek during certain workweeks. PSOF ¶ 23 (deemed admitted). They regularly worked 50 to 75 hours per week, with some working as much as 90 hours per week on occasion. *Id.* Defendants created "chit tapes" to show certain kitchen staff members how they were paid during a particular biweekly period. *Id.* ¶ 25. These chit tapes showed: the hours worked by the employee during each week of the biweekly period; the total hours worked during that biweekly period; the employee's regular

6

rate of pay; and the employees' total pay based on the total hours worked multiplied by the regular rate. *Id*. The chit tapes also reflect the amount of the total pay that was paid by check and by cash. *Id*. Kitchen staff members generally did not receive advances on their pay or loans from Defendants. *Id*. ¶ 28.

### B. *Recordkeeping*

Defendants did not keep records of the amounts of money servers tipped out or how tip out money was distributed. Id. ¶ 30. Defendants created "chit tapes" to show kitchen staff members how they were paid during a particular biweekly period. PSOF ¶ 25. Because Defendants did not generally keep the chit tapes, Defendants' handwritten notebooks are the only record of cash payments purportedly made to kitchen staff members. Id. ¶ 34. However, these handwritten notebooks show inconsistencies with Defendants' other payment records. *Id*. ¶ 33.[2]

## V.  Relief Requested

The Secretary alleges that Defendants owe their employees a total of $83,414.74 in back wages and an equal amount in liquidated damages for a total amount of $166,829.48. (Dkt. 51 at 13–15). The Secretary also seeks injunctive relief "to protect their employees from continued violations by Defendants and ensure Defendants keep records from which compliance can be determined in the future." (Dkt. 51 at 16).

## ANALYSIS

---

[2] The Court deems admitted the detailed discrepancies contained in PSOF ¶ 33 to the extent it shows inconsistencies in Defendants' records. However, the Court cannot deem admitted the Secretary's speculation that the handwritten notebooks are "suspect." PSOF ¶ 33.

The Secretary argues that there is no genuine issue of material fact that Defendants violated the FLSA by (1) keeping a portion of servers' tips through an improper tip out policy; (2) failing to pay an overtime rate to kitchen staff who worked more than 40 hours a week and (3) failing to keep accurate records of employee pay. Defendants concede that they are covered by the FLSA and would be jointly and severally liable if held liable for FLSA violations. (Dkt. 54 at 2). However, Defendants respond that there are issues of fact with regard to each of the Secretary's claims.

I. **The Secretary is entitled to summary judgment on the claim that Defendants' tip out policy violated the FLSA**

The Secretary first argues that Defendants violated the FLSA by improperly taking a portion of the servers' tips. The FLSA requires employers to pay their employees a minimum wage for each hour of work. 29 U.S.C. § 206. An employer may offset its minimum wage obligations to a tipped employee by the tips the employee actually receives. 29 U.S.C. § 203(m)(2). This offset is known as a "tip credit." *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 645 (N.D. Ill. 2007). The theory underlying the "tip credit" is that "employers may use 'a portion of the employee's tip income to supplement its minimum wage obligation to the employee, so long as the employee's combined cash wage and tip income meets or exceeds the minimum wage.'" *Id.* at 645–46 (cleaned up). It is the employer's burden to "establish[] its entitlement to take [the tip credit]." *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013) (cleaned up).

To take a tip credit under the FLSA, an employer must give notice to its employees and allow employees to retain all of their tips, unless the employees participate in a

8

*valid* tip pool, which redistributes tips to other employees. *Walsh v. Dayemi Org., Inc.*, 608 F. Supp. 3d 715, 721–22 (S.D. Ill. 2022). A valid tip pool is limited to employees who are "customarily and regularly" tipped, and the employer cannot retain any of the tips for any other purpose. *Id*. "If the tip pool is invalid – either because it includes employees who do not 'customarily and regularly receive tips,' or because the employer retains a portion of the tips for some other purpose – the employer may not take the tip credit and must pay minimum wage instead." *Id*.; *see also* 29 C.F.R. § 531.54(c) (in a valid tip pooling arrangement, the employer "may not retain any of the employees' tips for any other purpose.").

Here, the Secretary has shown as a matter of law that Defendants' tip pool was invalid. Defendants do not dispute that they were taking a tip credit, requiring them to comply with 29 U.S.C. § 203(m). Defendants admit that servers put a portion of tips earned during each shift into their designated envelope, and at the end of the day, Pete Giafis collected the envelopes containing the servers' tip out money. PSOF ¶ 17. Defendants admit that Pete would combine the money from the servers' envelopes and keep it in the restaurant's "vault", without differentiating the servers' money from other cash in the vault. *Id*. Defendants further admit that money in the cash vault was used as "cash flow for the restaurant"–to pay employees and to pay cash for small deliveries from vendors. *Id*. ¶ 18.[3]

---

[3] The Secretary asserts that the tip money in the vault was used to pay vendors for small deliveries. (Dkt. 52 at ¶ 17 & 18). To the contrary, Defendants assert in their brief (Dkt. 54 at 5), that tip pool money was not used to pay cash deliveries, relying on DSOF ¶ 27. Accepting the facts most favorable to the non-movant—that the cash for tips was not used for vendors—there is still not a material issue of fact because Defendants admit they (1) did

9

Defendants attempt to defend the use of the tip money by arguing that it was "used for payroll". Def. Resp. ¶ 17. This assertion is not only unsupported by any citation to evidence, it also does not help Defendants avoid liability because in using the tip money to pay the kitchen staff, Defendants improperly shared the tip money with staff who were *not* "customarily and regularly" tipped employees. Indeed, the Secretary specifically argued that dishwashers and cooks are not "customarily and regularly" tipped employees (Dkt. 51, n. 1) and Defendants did not respond to this argument. In addition, Defendants do not assert that the tip arrangement was agreed-upon by the employees. *See* 29 C.F.R. § 531.54(a) (in a tip pool, the employer may redistribute tips "to the employees upon some basis to which they have mutually agreed among themselves."). In sum, Defendants used the tip money for a business expense when they used it for "payroll" for kitchen staff. *See* 29 C.F.R. § 531.54(c) (employer "may not retain any of the employees' tips for *any other purpose*.") (emphasis added); *see also Rui Tong v. Henderson Kitchen Inc.*, No. CV 17-1073, 2018 WL 4961622, at *6 (E.D. Pa. Oct. 12, 2018) (using tips to pay non-tipped employees violates the tip credit rules).[4]

Defendants maintain, nevertheless, that the Secretary should not be allowed to seek damages for unlawfully withheld tips without seeking damages for a minimum

---

not differentiate the tip money from other cash in the vault, and (2) used the tip money as salary for other employees who are not "customarily and regularly" tipped.

[4] The Court does not need to address the parties' arguments about whether the tip pool was voluntary; the Court has found the tip pool was invalid because "it include[d] employees who do not 'customarily and regularly receive tips,'" and also "because the employer retain[d] a portion of the tips for some other purpose." *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 404 (N.D. Ill. 2019).

10

wage or tip credit violation. The Secretary responds that a 2018 amendment to the FLSA permits him to seek damages for a violation of § 203(m). (Dkt. 55 at 4). 29 USC § 216(c), which addresses the Secretary's authority, provides that if section 203(m)(2)(B) is violated, the employer is liable for "the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and an additional equal amount as liquidated damages." (The Secretary is pursuing recovery of unlawfully kept tips only (Dkt. 55 at 4)). Defendants do not dispute that the Secretary claims they violated § 3(m)(2)(B) of the FLSA. Thus, the Secretary has standing to pursue this claim.

The Court finds there is no genuine issue of material fact that Defendants improperly retained a portion of the servers' tips. Summary judgment is therefore granted to the Secretary on this claim.

## II.     Summary judgment is not warranted on the overtime claim.

The Secretary next argues that Defendants failed to pay kitchen staff at appropriate overtime rates. The FLSA sets a maximum workweek of 40 hours and requires employers to pay employees at 1.5 times the employee's regular rate for hours worked in excess of 40 in a workweek, that is, the overtime premium rate. 29 U.S.C. § 207(a)(1). An employee bringing an FLSA suit "'has the burden of proving that he performed work for which he was not properly compensated.'" *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). "Where the employee alleges that his employer kept inaccurate records, he 'has carried out his burden if he proves that he

11

has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id*. (quoting *Anderson*, 328 U.S. at 687). "At that point, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id*. (quoting *Anderson*, 328 U.S. at 687-88). Defendants do not argue that the Secretary did not meet his initial burden for the overtime claim. *See* Dkt. 54. Indeed, WHD Investigator Reggiardo explained the employee timecards and records he reviewed and how he arrived at his overtime calculation. (Reggiardo Decl. (Dkt. 50-12), ¶ 17). The burden thus shifts to Defendants to provided evidence "to negate the reasonableness of the inference to be drawn from the employee's evidence." *Melton*, 838 F.3d at 818.

It is undisputed that Defendants' kitchen staff regularly logged work weeks in excess of 40 hours. PSOF at ¶ 23. And it is undisputed that employees working more than 40 hours per week were entitled to overtime. The following employees testified that they routinely worked more than 40 hours per week (working eight hours per day seven days per week with short breaks for meals) and were not paid a premium rate for hours over forty: Cristian Vallejo, Gavino Vallejo, Jose Cortez, Fernando Rojas, Josue Tapia, Juan Pinzon.

In addition, the parties agree that Defendants used "chit tapes" to show certain kitchen staff members how they were paid during a particular biweekly period. PSOF ¶ 25 (deemed admitted). It is troubling that "chit tapes" that exist show that kitchen

12

staff were paid their regular rate of pay for all hours worked, including the hours over 40 in a given week.[5] *Id.* However, the "chit tapes" were generally not maintained. *Id.* at ¶ 27.

Still, Defendants argue that there is an issue of fact about whether employees were paid overtime.

Defendants rely on evidence beyond the chit tapes to show that overtime was paid, particularly: (1) testimony of two certain employees, Ramon Gonzalez and Antonio Alvarez, who both state they were paid overtime wages (Dkt. 54 at 8; Dkt. 53-2, p. 19; Dkt. 53-3, pp. 19-20); and (2) Defendants' handwritten notebooks. The Secretary suggests that the Court should disregard the testimony of the two employees essentially because six employees either testified or presented declarations to the contrary. (Dkt. 55 at 7-8). But the Court "must refrain from making credibility determinations or weighing evidence" at summary judgment. *Viamedia*, 951 F.3d at 467 (citing *Anderson*, 477 U.S. at 255).

Turning to the handwritten notebooks, Defendants assert they establish that back of the house employees were properly paid at both regular and overtime rates. DSOF ¶ 9. The Secretary disputes that these handwritten notebooks are credible in light of certain internal inconsistencies as well as inconsistencies with the "chit tapes" and with employee testimony.[6] The questions about the internal inconsistencies and

---

[5] The "chit tape" concerning employee Valentino Cruz establishes that he worked 60.5 hours and 66.0 hours in two consecutive weeks: 126.5 hours total. He was paid $11 per hour for every hour worked—no overtime. PSOF ¶ 25; Dkt. 50-16. Moreover, Stavroula agreed with this calculation during her deposition. Dkt. 50-1 at p. 90-92.

[6] One troubling aspect of the handwritten notebooks is their reflecting "advances" to Cristian Vallejo, (Dkt. 50-17 at DOL000017), when he testified under oath that he did not receive any advances. Dkt. 50-3 at 38:1-6.

13

consistency with other pay records convince the Court that a question of fact exists on the overtime claim.[7] A jury will resolve factual issues raised by Defendants' handwritten notebooks and missing pay records, as well as the conflicting employee testimony about whether they were paid overtime.

Viewing the facts in the light most favorable to Defendants, there are issues of fact about whether employees were properly paid their overtime wages. Therefore, summary judgment on this claim is denied.

### III. The Court grants summary judgment in the Secretary's favor on the recordkeeping violation

"The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees." *Skelton v. Am. Intercontinental Univ. Online*, 382 F.Supp.2d 1068, 1071 (N.D. Ill. 2005). The FLSA requires that employers "shall make, keep, and preserve ... records of the persons employed" and of "the wages, hours, and other conditions and practices of employment maintained" by the employer, and "shall preserve such records for such periods of time" required by regulation. 29 U.S.C. § 211(c). Records must include, among other items, an employee's regular hourly rate; hours worked each workday and each workweek; the total daily or weekly straight-time earnings or wages due; and the total premium pay. 29 C.F.R. § 516.2(a)(6)-(9). For tipped employees, employers are also required to keep and maintain records of the weekly or monthly amounts of tips employees receive and

---

[7] Although Reggiardo averred that certain employees told him that the handwritten notebook pages were not accurate or were not signed by them (Reggiardo Decl. ¶ 13) and certain employees have testified to the same, these are issues for the jury to weigh and determine witness credibility.

report to the employer and the amount by which wages were increased by tips. 29 C.F.R. § 516.28. Payroll records must be maintained for three years and time records, including timecards, must be retained for two years. 29 C.F.R. §§ 516.5, 516.6.

It is undisputed that Defendants did not keep records of the amounts of money servers tipped out or how the tip out money was distributed. PSOF ¶ 30. Defendants also admitted that tip money in the servers' envelopes went into the restaurant's cash "vault", and Defendants did not differentiate the servers' money from other cash in the restaurant's cash vault. *Id.* ¶ 17. Therefore, the Court grants summary judgment to the Secretary on the claim that Defendants violated FLSA's recordkeeping requirements as to their tip out practice. Moreover, it is undisputed that the "chit tapes" were accurate and were discarded. Therefore, summary judgment is appropriate on the Secretary's allegation that Defendant's overtime records were not properly maintained. *See Walsh*, 608 F. Supp.3d 715 (granting summary judgment on the Secretary's claim for failure to preserve timecards and denying summary judgment on the Secretary's overtime claim.); 29 C.F.R. §§ 516.5, 516.6 (Payroll records must be maintained for three years and time records, including timecards, must be retained for two years.).

**IV.     Remedies**

As relief, the Secretary seeks: (1) back wages; (2) liquidated damages; and (3) an injunction. The Court addresses damages as to the tip violation.[8]

---

[8] Having found an issue of fact as to whether Defendants failed to pay overtime wages, the Court reserves ruling on the Secretary's calculation of damages with regards to his overtime claim.

15

*A. Back Wages*

The Secretary seeks a total of $26,280 in unlawfully kept tips to 15 servers. Reggiardo explains how he calculated the amount of tip money retained by Defendants based on servers' interview statements and Defendants' timecards. Reggiardo Decl. ¶ 17. The Court finds that Reggiardo's calculation satisfies the standard to show employees performed work for which they were improperly compensated and provides "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008). Defendants failed to keep accurate records of tips and so the Secretary's approximation is sufficient. Defendants argue that Reggiardo's calculation is self-serving, arbitrary, and not based on enough employee testimony. (Dkt. 54 at 7). These arguments are not convincing. The burden-shifting rule "allows plaintiffs to recover for unpaid time once they establish liability even if the employer's faulty records preclude a precise calculation of damages." *Gabryszak v. Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 1002 (N.D. Ill. 2019).

The parties next dispute whether Defendants' violations were willful. The Secretary argues that it is entitled to back wages and liquidated damages for a three-year statutory period pursuant to 29 U.S.C. § 255(a) because Defendants' violations were willful. To show "willfulness," a plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (emphasis added). The applicable regulations define reckless disregard as the "failure

16

to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

Considering the evidence, the Court concludes that the tip policy violation was willful considering Defendants' commingling of money, inconsistent explanations for what the tip-out money was used for and the failure to record the amount of money that was collected through the tip out practice. Similarly, Defendant's recordkeeping violations were willful. These findings are supported by the fact that Defendants were investigated once before, and Pete and Stavroula Giafis did not claim ignorance of the prior investigation and its findings. *See e.g. Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 919 (9th Cir. 2003) (the fact "that [defendant] previously had run-ins with the Labor Department certainly put [defendant] on notice of other potential FLSA requirements").

Accordingly, the Court finds that the 15 servers are owed $26,280.

### B. Liquidated Damages

For an FLSA violation, "there is a presumption of double damages…absent a showing of good faith and reasonable belief that the employer was in compliance with the FLSA." *Berger*, 430 F. Supp. 3d at 408; *see also* 29 U.S.C. § 216(b). Liquidated damages are "mandatory [for FLSA violations] unless the court finds that the employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998). The employer has the burden of proving both good faith and reasonable belief. *Uphoff v. Elegant Bath, LTD.*, 176 F.3d 399, 405 (7th Cir. 1999).

Defendants' response (Dkt. 54 at 13) does not demonstrate or provide evidence of affirmative steps taken to comply with the FLSA, particularly following the findings of the first investigation. *See Pautlitz v. City of Naperville*, 874 F. Supp. 834, 834 (N.D. Ill. 1994) ("Failure to take affirmative action to ascertain the [FLSA]'s requirements precludes a finding of reasonable good faith.").

As such, Defendants are liable for liquidated damages on the tip sharing claim.

### C. *Injunctive Relief*

Under 29 U.S.C. § 217, district courts have authority to restrain violations of FLSA pay provisions. An injunction is necessary under the FLSA if there are insufficient assurances of an employer's future compliance. *See e.g., Perez v. Super Maid, LLC*, 55 F. Supp.3d 1065, 1080 (N.D. Ill. 2014).

Defendant's sole argument against the request for injunctive relief is that it is premature as there has been no finding that Defendants violated the Act. The Court has found that Defendants have violated 29 U.S.C. 203(m). Thus, the Court grants the Secretary's request for an injunction as to the violation of 29 U.S.C. 203(m).

## CONCLUSION

For the reasons stated, the Secretary's motion for summary judgment [49] is granted in part and denied in part. The Court finds as a matter of law that Defendants violated FLSA's tip sharing and recordkeeping requirements. The Court has found that Defendants are liable for $26,280 in back wages as well as $26,280 in liquidated damages, such that the total owed is $52,560. The court also enjoins this conduct. Summary judgment is denied as to the overtime claim.

E N T E R:

Dated: March 27, 2023

MARY M. ROWLAND
United States District Judge